# KREIGH *v.* WESTINGHOUSE, CHURCH, KERR & COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 188.  Argued April 27, 28, 1909.—Decided May 24, 1909.

Where at the time of removal to the Federal court neither of the parties was a resident nor citizen of the district, that defect, although jurisdictional, being only as to the particular district, can be waived; and is waived, if, as in this case, the parties make up the issues on the merits without objecting to the jurisdiction. *Re Moore*, 209 U. S. 490; *Western Loan Co.* v. *Butte Co.*, 210 U. S. 368.

It is the duty of the master to use reasonable diligence in providing a safe place for his employés to work in and to carry on his business; and the employé may, in the absence of notice to the contrary, assume that the master will use reasonable care in furnishing appliances for carrying on the business. *Choctaw & Oklahoma R. R.* v. *McDade*, 191 U. S. 64.

The duty of the master to provide safe place and appliances for his employés is a continuing one and must be exercised whenever circumstances demand it, *Santa Fe & Pacific R. R.* v. *Holmes*, 202 U. S. 438; and this applies where the workmen are engaged in work more or less dangerous and it is only a matter of using due skill and care to make the place and appliances safe. *Choctaw & Oklahoma R. R.* v. *McDade*, 191 U. S. 64.

Where the negligence of the master in failing to provide and maintain a safe place contributes to the injury of the employé, the master is liable notwithstanding the concurring negligence of those performing the work. *Deserant* v. *Cerillos Coal R. R. Co.*, 178 U. S. 409.

Questions of negligence do not become questions of law except where all reasonable men must draw the same conclusion from the evidence, nor should a case be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish. *Gardner* v. *Michigan Cent. R. R.*, 150 U. S. 349.

In this case *held* that there was sufficient evidence as to the defective condition of a derrick and the method in which it was operated to

require the submission, under proper instructions from the court, to the jury.

152 Fed. Rep. 120, reversed.

THE facts are stated in the opinion.

*Mr. James S. Botsford* and *Mr. Rees Turpin* for petitioner:

The plaintiff's injury was the natural and probable consequence of an act of negligence and is therefore actionable because it could have been foreseen and reasonably anticipated and was the probable result of the act and omission of defendant. *B. & O. R. R. Co.* v. *Baugh,* 149 U. S. 368, 386.

It was plaintiff's duty to be where he was at the time of the accident, and he had a right to assume that the bucket was being moved by a lever or by guy and ropes, so as to control the movement of the bucket, and that warnings and signals of the movement of the bucket would be given. *L. & N. R. R. Co.* v. *Ward,* 61 Fed. Rep. 927; *Union Pac. R. R. Co.* v. *McDonald,* 152 U. S. 262; *Colusa-Parrot Mining & Smelting Co.* v. *Monahan,* 162 Fed. Rep. 276; *Lang* v. *Terry,* 163 Massachusetts, 138; *Newark Electric Light & Power Co.* v. *Garden,* 78 Fed. Rep. 74.

Not only was plaintiff ignorant of the defendant's failure to provide for his safety, but the law cast no obligation upon him to become familiar with it. *Swoboda* v. *Ward,* 40 Michigan 420; *Grace Hyde Co.* v. *Kennedy,* 99 Fed. Rep. 682.

The statement of the Circuit Court of Appeals as to the rule of safe place is correct as a general statement of the law, but does not lead to the result adjudged. The rule applicable to the present case is correctly laid down in *National Refining Co.* v. *Willis,* 143 Fed. Rep. 147; *Austin Manufacturing Co.* v. *Johnson,* 89 Fed. Rep. 677; 32 C. C. A. 309.

Where the servants engaged in a department of work themselves change the condition of the place where they are employed by the work they are doing and by that work create a peril by reason of which one of their number engaged in the same department of work is injured the master is not liable.

*Armour v. Hahn,* 111 U. S. 313. The reason of the rule is that the master should not be liable for an injury caused by the working place becoming unsafe at the particular time of the accident by causes that could not have been anticipated or by sudden exigencies created in carrying on the details of the work. *Grace Hyde Co.* v. *Kennedy,* 99 Fed. Rep. 679. When the plan or method of doing the work directed by the master or any omission of the master creates a danger not necessarily attendant upon the work in which the servant is engaged the master is liable for the results of that danger although it arises in the progress of the work. *Woods* v. *Lindvall,* 48 Fed. Rep. 62; *Thompson-Starrett Co.* v. *Fitzgerald,* 149 Fed. Rep. 721; *Grace Hyde Co.* v. *Kennedy,* 99 Fed. Rep. 679; *Western Electric Co.* v. *Hanselman,* 136 Fed. Rep. 564; *Felice* v. *New York Central & H. R. R. R. Co.,* 14 N. Y. App. Div. 345; *Lang v. Terry,* 163 Massachusetts, 138; *McCauley* v. *Norcross et al.,* 30 N. E. Rep. 464.

*Mr. Clifford Histed,* with whom *Mr. James H. Harkless* was on the brief, for respondent:

In so far as it is claimed that the injury to the plaintiff petitioner was brought about by the other workmen upon the building the doctrine of fellow-servant exempts defendant from liability. *Northern Pacific* v. *Dixon,* 194 U. S. 338; *Northern Pacific* v. *Peterson,* 162 U. S. 346; *B. & O. R. R.* v. *Brown,* 146 Fed. Rep. 24.

The charge of a defective and faulty construction of the derrick was not sustained by the proof. The same is true as to the alleged failure to furnish a system of signals.

Plaintiff's own negligence contributed to his injury. The case is a somewhat peculiar one in respect to the conduct of the plaintiff, who was an exceptionally intelligent and capable man. The derrick was in plain view of the plaintiff upon the roof and he fairly admits in his testimony that he knew that the men had rested the tub on the roof and, of course, he must have known that they would soon be sending it back. He ap-

parently became absorbed in the particular work in which he was engaged and entirely oblivious to his surroundings. He then went along the wall to a point directly in front of the derrick and in the path that the bucket must follow, turned his back upon the men and gave his entire attention to what the people below him were doing, utterly unmindful of his own situation. Of course it goes without saying that he owed a duty to pay reasonable heed to his situation. See *Ross* v. *Ry. Co.*, 113 Mo. App. 600; *National Biscuit Co.* v. *Nolan*, 138 Fed. Rep. 6.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon a writ of certiorari to the United States Circuit Court of Appeals for the Eighth Circuit. The action was originally brought to recover for injuries received by Eugene C. Kreigh, petitioner, hereinafter called the plaintiff, while engaged in the employ of the respondent, Westinghouse, Church, Kerr & Company, hereinafter called the defendant, superintending the construction of the brickwork in the erection of a brick and steel building for which the defendant was the contractor.

The case was originally commenced in the District Court of Wyandotte County, Kansas. On the application of the defendant it was removed to the United States Circuit Court for the District of Kansas. In the petition for the allowance of the writ of certiorari a question was made as to the jurisdiction of the Federal court, as it appears that at the time of the removal neither party was a resident nor citizen of the Federal district to which the case was removed, and neither of them a resident nor citizen of the State of Kansas. But it appears that no motion was made to remand for want of jurisdiction in the Federal court, and no question as to the jurisdiction was made until the case came here. In that state of the record the defect as to the jurisdiction being simply as to the district to which the suit was removed, the parties being citizens of different States, the

objection as to the jurisdiction might be, and, in our opinion, was waived, by making up the issues on the merits without objection as to the jurisdiction of the court. It is unnecessary to enlarge upon this feature of the case, as it is controlled by the recent cases of *In re Moore,* 209 U. S. 490; *Western Loan &c. Co.* v. *Butte Mining Co.,* 210 U. S. 368.

The remaining question in the case concerns the correctness of the ruling of the Circuit Court, affirmed in the Court of Appeals, whereby, upon the conclusion of the evidence offered by the plaintiff, a demurrer thereto was sustained and the case taken from the jury.

The testimony shows, and in deciding a question of this character the view must be taken of it most favorable to the plaintiff, that he was foreman of the bricklayers engaged in the construction of a large brick building, which the defendant, as principal contractor, was erecting in Kansas City. About the time of the plaintiff's injury a gang of workmen, also employés of the defendant, were engaged in cementing the roof of the building, the plaintiff and his men being engaged in laying the brickwork of the north wall of the building. The roofers were laying concrete upon the top of the roof. This was accomplished by means of a derrick with a rope and bucket attachment for raising the material, which was on the ground on the north side of the building, and which, by means of the derrick and motive power, was raised in the bucket suspended from the boom, or arm, of the derrick, to a height slightly above the roof, and then pulled inward by means of a guy rope attached to the boom, and when the bucket was at the proper place the bottom of it was opened and the concrete deposited upon the roof. Then, in order to put the bucket in position for lowering it, it was swung out over the north wall by means of an energetic push, carrying the end of the boom over the north wall and in position for lowering the bucket again. The work of brick-laying under the superintendence of the plaintiff had progressed to a height of about forty feet in the north wall, and the plaintiff, superintending the erection of a scaffolding for

the men to work upon in the further construction of the wall, was standing upon a plank near the wall, when the boom was swung outward by a push from the men operating it, and the plaintiff was struck by the heavy bucket attached to the rope from the end of the boom, and was knocked off the plank and fell a distance of forty feet to the ground and thereby severely injured.

The testimony shows that the derrick used for the purposes stated was what is known as a "stiff-legged derrick," having a main staff supported by two stiff legs or braces with a swinging boom with hoisting rope attached to it. The derrick at the time was on the top of the roof and was operated by an engine furnishing the power for hoisting the bucket in the manner we have already described.

The plaintiff introduced testimony tending to show that the usual method of constructing such derricks was to provide them with two ropes, one attached on either side of the end of the boom, to be used to haul it back and forth, and for the purpose of steadying its operation; or by the attachment of a lever to the mast in such a way that a man operating the lever could control the swing of the boom. The boom in use had but the one guy rope, and that the testimony shows was used for hauling the loaded bucket over the top of the wall to the place where the load was dumped on the roof. The method of returning the bucket for lowering was by a strong push of the boom, the single guy rope thereof hanging loose at the time.

The testimony of the plaintiff tended to show that while he knew there was a derrick on the roof, he did not know of its method of operation further than he knew that it was operated by hand. He did not know the number of ropes attached to the boom, or whether there was a lever or not; he had not seen the boom in operation from the roof. At the time he was struck, when working on the north wall, he received no warning of the approach of the bucket, and had been there but a very short time when he was struck by the bucket and knocked to the ground.

In the amended petition it was charged as grounds for recovery that—

"1. The defendants were careless and negligent in furnishing and operating a defective, improper and unsafe derrick to raise, move and lower said tub or bucket.

"(a) Said derrick was so constructed and operated that there were no means of moving the arm thereof and said bucket or tub after it was emptied, horizontally to or over the north wall of said building, excepting by the employés of the defendants violently pushing the tub or bucket with sufficient force to cause it to clear the wall of the building and also move with it said arm.

"(b) Said derrick was so constructed and operated that there were no means of stopping or controlling it or the tub or bucket attached thereto after the bucket or tub was emptied and started toward and over the wall of said building.

"(c) The ropes and pulleys on said derrick were defective, insecure and improperly arranged and used.

"2. The defendants were careless and negligent in causing and allowing said bucket to be violently pushed and swung against the plaintiff without notice or warning to him.

"3. The defendants were careless and negligent in failing to supply and use a system of signals or warnings to notify persons on the building when the derrick, tub or bucket were to be moved, raised or lowered."

The duty of the master to use reasonable diligence in providing a safe place for the men in his employ to work in and to carry on the business of the master for which they are engaged has been so frequently applied in this court, and is now so thoroughly settled, as to require but little reference to the cases in which the doctrine has been declared. *Baltimore & Potomac R. R. Co.* v. *Mackey,* 157 U. S. 72, 87; *Northern Pacific R. R. Co.* v. *O'Brien,* 161 U. S. 451; *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade,* 191 U. S. 64.

The employé is not obliged to examine into the employer's methods of transacting his business, and he may assume, in

the absence of notice to the contrary, that reasonable care will be used in furnishing appliances necessary to carrying on the business. *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade,* 191 U. S. 64, 68. But while this duty is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he. the. master, has discharged his primary duty of providing a reasonably safe appliance and place for his employés to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow-workmen. *Armour* v. *Hahn,* 111 U. S. 313; *Perry* v. *Rogers,* 157 N. Y. 251.

Nevertheless, the duty of providing a reasonably safe place for the carrying on of the work is a continuing one, and is discharged only when the master furnishes and maintains a place of that character. As late as *Santa Fe & Pacific R. R. Co.* v. *Holmes,* 202 U. S. 438, it was declared: "The duty is a continuing one and must be exercised whenever circumstances demand it."

Where workmen are engaged in a business, more or less dangerous, it is the duty of the master to exercise reasonable care for the safety of all his employés, and not to expose them to the danger of being hurt or injured by the use of a dangerous appliance or unsafe place to work, where it is only a matter of using due skill and care to make the place and appliances safe. There is no reason why an employé should be exposed to dangers unnecessary to the proper operation of the business of his employer. *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade,* 191 U. S. 64, 66, and cases there cited.

As we have said, this case was taken from the jury when only the plaintiff's evidence had been introduced, and when the plaintiff had the right to have it submitted to the jury in its most favorable aspect if it fairly tended to show liability on the

part of the master.  The plaintiff's witnesses, experts in this field of operation, testified that the proper construction and management of such a derrick required that its boom should be rigged with two guy ropes instead of one, or that the mast should be provided with a lever by means of which the men in control could safely operate the boom.  In that view we think it was a question for the jury to determine whether the operation of this derrick, which would swing the bucket into the field of operations where the plaintiff and others were constructing the wall and might be injured, unless the operations of the boom were properly controlled, was not attributable to faults of construction and equipment, as well as to negligent operation at the time of injury.

It is contended by the defendant that the boom could have been safely operated with one rope had the men used care in the operation thereof.  But in view of the testimony referred to we think it was a question for the jury to determine whether the character of derrick furnished by the master discharged his obligation to furnish and maintain for the plaintiff and his associates a reasonably safe place in which to labor, and whether that kind of derrick was not of itself a dangerous instrumentality when operated where others were likely to labor in the course of their employment.

If the negligence of the master in failing to provide and maintain a safe place to work contributed to the injury received by the plaintiff the master would be liable, notwithstanding the concurring negligence of those performing the work.  *Grand Trunk R. R. Co.* v. *Cummings*, 106 U. S. 700; *Deserant* v. *Cerrillos Coal Railroad Co.*, 178 U. S. 409, 420; and cases there cited.

It is further argued that the testimony shows that the injuries to the plaintiff were solely caused by the negligence of the men operating the derrick in giving it a sudden and strong push toward the north wall, where the plaintiff was standing when injured, and it is contended that the derrick could not have injured the plaintiff but for the negligent operation

thereof by the fellow-servants of the plaintiff using the same. But here again we think the question was one for the jury to determine.

Questions of negligence do not become questions of law to be decided by the court, except "where the facts are such that all reasonable men must draw the same conclusion from them, and the case is not to be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." *Gardner* v. *Mich. Cent. Railroad*, 150 U. S. 349, 361.

It may be that the jury would have found that the injury to the plaintiff was the result solely of the negligence of his fellow-servants, but there was testimony in the case tending to establish the unsafe character of the derrick when operated in the manner it was intended to be operated, so far as the record discloses. Of course, so long as there were no workmen in the probable swing of the bucket attached by the rope to the boom, there was no danger to the bricklayers. But a jury might have found that when the bricklayers came within the plane of operation of the derrick the swinging bucket became a constant menace to them, and they might consider that, in view of the testimony adduced, the duty of the master had not been discharged in furnishing an appliance the operation of which might make unsafe the place in which the workmen were engaged in carrying on their work. The mere fact that until the workmen came within the plane of operation of the boom and swinging bucket, there was no danger to them, would not affect the case in view of the continuing duty of the master to use reasonable care to keep the place where the workmen were engaged free from dangers not necessarily incident to the business. In other words, we think that upon this branch of the case it was a question for the jury to determine whether the alleged defective appliances contributed directly to produce the injuries complained of.

But it is insisted that the testimony shows that the de-

fendant was guilty of such contributory negligence as should prevent any recovery. But we think there was enough in the case to take it to the jury upon this branch of it. The testimony shows that the plaintiff was engaged in the direct line of his duty at the time of his injury. Whether he had reason to expect the swinging of the bucket across the place where he was at work, without notice or warning to him, or whether he ought to expect that the bucket would swing where he was at work, and that his own safety required him to keep a constant lookout for the approach of the same, were questions for the jury to determine under proper instructions as to the care required of the plaintiff as well as of the defendant. *Lang* v. *Terry,* 163 Massachusetts, 138.

Upon the whole case, we are of opinion that as the testimony stood at the time the case was arrested from the jury, there was enough in it to require its submission, under proper instructions from the court, to the jury to determine the questions involved. In this view we think it was error to take the case from the jury and to instruct for the defendant in the Circuit Court, and that the Circuit Court of Appeals erred in affirming that judgment.

Judgment reversed and cause remanded to the Circuit Court with directions to grant a new trial.

*Reversed.*