EUGENE C. KREIGH, *Appellee*, v. WESTINGHOUSE, CHURCH, KERR AND COMPANY, *Appellant*.

No. 17,486.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Master and Servant—Safe Place to Work*. It is the duty of the master to use reasonable diligence to provide a safe place for his employees to work, and also to provide safe appliances for the work, and this duty is a continuing one which can not be so delegated as to relieve the master of his responsibility.

2. ——— *Same*. If the negligence of the master in failing to furnish a safe place to work or to provide such appliances contributes to the injury of an employee, it constitutes no de-

fense to the master that the negligence of other employees also contributed to such injury, but he is liable therefor.

3. DEMURRER — *Special Findings* — *Motion for Judgment.* No error was made in overruling the demurrer to appellee's evidence nor in refusing to render judgment for appellant upon the special finding and against the general verdict in this case.

Appeal from Wyandotte district court, division No. 2. Opinion filed April 6, 1912. Affirmed.

*Jules Rosenberger, Kersey Coates Reed,* and *A. L. Berger,* for the appellant; *H. H. McCluer,* of counsel.

*Rees Turpin,* and *James S. Botsford,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: Kreigh brought this action in the district court of Wyandotte county from whence it was removed to the United States district court. The trial was therein commenced, and at the close of plaintiff's evidence a demurrer thereto was sustained. He appealed to the United States circuit court of appeals, where the decision of the district court was affirmed. He again appealed to the supreme court of the United States, in which the former decisions were reversed. The action thereupon seems to have been dismissed without prejudice and again brought in the district court of Wyandotte county. Therein the case was tried to a jury and Kreigh recovered a verdict and judgment for $5750, and the company brings its appeal to this court.

The following is an abstract of the pleadings and of the facts as found by the jury and there is practically no dispute in reference thereto.

The amended petition charged, in substance, the incorporation of the defendant; that in 1904 the defendant was engaged in erecting a building for a soap plant for the Proctor & Gamble Company in Kansas City, Kansas; that plaintiff was in the service of the defendant as foreman of the brick work; that on Octo-

ber 25, 1904, plaintiff was injured by being struck by a bucket or tub suspended from the bottom of a derrick which was being used to carry concrete from the ground to the roof of the building; that when he was struck he was on top of the unfinished building, and that he was thrown to the ground below and injured.

The petition specifies the alleged negligence as follows: The defendant was careless and negligent in furnishing and operating a defective, improper and unsafe derrick to raise, move and lower said tub or bucket; said derrick was so constructed and operated that there were no means of moving the arm thereof and said bucket or tub, after it was emptied, horizontally to or over the north wall of said building, excepting by the employees of the defendant violently pushing the tub or bucket with sufficient force to cause it to clear the wall of the building and also to move with it said arm; said derrick was so constructed and operated that there were no means of stopping or controlling it or the tub or bucket attached thereto after the tub or bucket was emptied and started toward and over the wall of said building; that defendant supplied an insufficient number and quantity of ropes for the equipment and operation of said derrick, and as a result thereof only one tag line was used, which tag line was attached to one side of the outer end of the boom, and there was no rope attached to said bucket or tub, and there was no proper, adequate and safe arrangement of ropes with which to control the horizontal movement of said derrick and said bucket or tub across the top of said building. Further, that the defendant was careless and negligent in causing and allowing said bucket to be violently pushed and swung against the defendant without notice or warning to him, and also that the defendant was careless and negligent in failing to supply and use a system of signals or warnings to notify persons on the build-

ing when the derrick, tub or bucket was to be moved, raised or lowered.

This is followed by a specification of plaintiff's injuries and damage; also a prayer for judgment in the sum of $15,000.

The answer was (1) a general denial; (2) that plaintiff's injuries were caused by his own carelessness; (3) assumption of risk; (4) that plaintiff's injuries were due to the carelessness of a fellow servant or servants of plaintiff.

The principal undisputed facts are: The building in question was at the time of the accident unfinished. It was of one story, 42 feet high, about 140 feet long east and west, by about 50 feet wide north and south. It was being erected by the defendant, as contractor, for the Proctor & Gamble Company, in Kansas City, Kan. It was of steel construction, i. e., the framework was of steel, the outer walls of brick. Plaintiff was foreman over the bricklayers and had worked on this job when hurt nearly two months.

At the time of the accident, the erection of this building had so far progressed that the steel framework was in place and the four outer walls had been put up by plaintiff and his men, except the north wall, in the erection of which plaintiff's bricklayers were at work at the time plaintiff was hurt. No part of the north wall was above the level of the steel girders on top. The bricklayers were all below the level of the steel girders. The only work being done on the roof that day was by a gang of laborers engaged in putting a concrete roof on the building. This concrete was a mixture of cement and Joplin grit, which was mixed on the ground below by another gang. For the purpose of raising this material to the roof, the derrick in question was used. The only persons on top the day of the accident besides the concrete gang were the plaintiff and two hodcarriers.

At the time he was hurt, plaintiff was walking along

the north edge of the steel work on some planks which had been laid across the steel beams and which were laid parallel with the north wall. He was planning to build a scaffold on top, and he went up there to direct some of his men who were below. At the immediate time he was hurt, he was looking at a gin pole some distance off to the north and was studying as to how he was to transfer a guy wire which had been guyed from the top of the gin pole and had been fastened to one of the steel beams of the building, and he was paying no attention to the derrick or the movements of the bucket.

The mast of the derrick was located near the northeast corner of the roof, so that the boom, which was about 20 feet long, with the load suspended therefrom, would project far enough over the north wall to enable the load to be lifted from the ground below on the north side of the building. The foot of the mast was about 12 feet from the east wall and about 12 feet from the north wall. About 18 feet southwest of the mast of the derrick was a wooden platform where the wet concrete was received in the bucket and dumped. The bucket, swung by block and tackle from the boom, was being used to carry the concrete. The concrete mixers, who were on the ground below and north of the building, would fill this bucket with concrete, the loaded bucket would then be raised by steam power from an engine below to about two or three feet above the level of the top, the bucket being kept clear of the wall by the tag line hanging from the bucket. When the loaded bucket was up, one of the concrete men on top would draw in the boom by means of a hand line, one end of which was fastened to the boom, causing it to swing toward them in the arc of a circle until it was directly over the concrete platform in the roof, and thereupon one of the men would pull a pin from a latch holding the bottom of the bucket in place, thereby releasing the bottom from the latch and caus-

ing the bottom of the bucket to swing downward on its hinges and allowing the contents of the bucket to empty upon the concrete platform. When the bucket had thus been emptied of its load one or more of the men by a push would send it back with impetus enough to carry it over the edge of the wall so that it could be lowered for another load. After such push was given to the bucket there was no means of stopping it, and no signal was usually, nor at the time of the accident, given of the starting of the bucket.

When Kreigh was struck he was facing north, away from the derrick; he was paying no attention to it; he did nothing to keep out of the way of the bucket; he "might have moved" into the way of the bucket. He had never heard of any warnings being given nor was he depending on being warned. At this time the derrick and concrete men would have been in plain sight had he been looking toward them.. They were facing him when they pushed the bucket and could have seen him had they looked. At the time of the accident, the concrete men and their foreman, the brick-layers and Kreigh were all engaged in the common purpose of completing the building under the supervision of the general superintendent, Clem.

There are in this case ninety assignments of error consecutively numbered. Some of the alleged errors are repeated three or four times, and mercifully no argument is made as to the much greater number of them. The real questions presented are few, and these could have been better presented if the distracting array of alleged errors had been limited. One material prejudicial error is sufficient to reverse a judgment here, but, in case a new trial is to be had, it is desirable to have all the substantial controverted questions of law predetermined. Even in contemplation of a new trial, there seems no justification for making more than one in ten of the assignments in this case.

Aside from the alleged erroneous conduct of the

court in its remarks to the jury after the case had been submitted to them, the principal questions to be determined are involved in the demurrer to appellee's evidence and the refusal, at the close of the evidence, to instruct the jury to return a verdict in favor of appellant. These questions, aside from the one excepted, have been fully discussed and decided by the supreme court of the United States in *Kreigh v. Westinghouse & Co.*, 214 U. S. 249. The headnotes in that case, omitting the paragraph relating to waiver of jurisdiction, read:

"It is the duty of the master to use reasonable diligence in providing a safe place for his employes to work in and to carry on his business; and the employe may, in the absence of notice to the contrary, assume that the master will use reasonable care in furnishing appliances for carrying on the business. *Choctaw & Oklahoma R. R. v. McDade,* 191 U. S. 64.

"The duty of the master to provide safe place and appliances for his employes is a continuing one and must be exercised whenever circumstances demand it, *Santa Fe & Pacific R. R. v. Holmes,* 202 U. S. 438; and this applies where the workmen are engaged in work more or less dangerous and it is only a matter of using due skill and care to make the place and appliances safe. *Choctaw & Oklahoma R. R. v. McDade,* 191 U. S. 64.

"Where the neligence of the master in failing to provide and maintain a safe place contributes to the injury of the employe, the master is liable notwithstanding the concurring negligence of those performing the work. *Deserant v. Cerillos Coal R. R. Co.,* 178 U. S. 409.

"Questions of neligence do not become questions of law except where all reasonable men must draw the same conclusion from the evidence, nor should a case be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish. *Gardner v. Michigan Cent. R. R.,* 150 U. S. 349.

"In this case *held* that there was sufficient evidence as to the defective condition of a derrick and the method in which it was operated to require the sub-

Kreigh v. Westinghouse & Co.

mission, under proper instructions from the court, to the jury."

We can not assume that the evidence on the trial there reviewed was identical with the evidence brought here, yet from the discussion in the opinion cited it must have been much the same. Indeed, the most prejudicial evidence to Kreigh's claim in the case at bar, as to whether the bucket was up and was being emptied when he went upon the roof, was elicited from him after reading to him portions of his deposition apparently used on the former trial. However, on the evidence here digested, we have arrived at the same legal conclusion as was promulgated in the decision of the supreme court of the United States. There was sufficient evidence to justify the refusal of the requested instruction directing a verdict for the defendant. The case was properly submitted to the jury.

A large number of special questions were submitted to be answered. One question, No. 70, reads:

"Were the concrete men who pushed off the bucket at the time plaintiff was hurt, guilty of negligence in the way they used and handled the bucket and derrick at said time, and was plaintiff hurt by reason thereof? Answer. No."

Even if it can be said that this answer is contrary to the evidence and that the concrete men were negligent in pushing off the bucket, when by simply looking they would have seen that Kreigh would be struck thereby, this would not avail the company as a defense if the master's negligence in failing to provide another guy rope or other means to check the bucket after it had started, or to give a signal of the starting of the bucket, also contributed to the injury. (*Kreigh v. Westinghouse & Co.,* supra.)

The general verdict is in favor of Kreigh, and it necessarily follows that the jury also found Kreigh was not guilty of contributory negligence and that the company was negligent in failing to safeguard him

and to furnish him a safe place to work while he was in the discharge of his duties. As frequently said, it is not within the province of this court to determine the preponderance of the evidence. Under the instructions the jury determined the facts submitted to them and agreed upon the verdict, all of which the court approved; and as there is substantial evidence in support of every fact essential to the verdict and judgment, this court can not, consistently with numerous and uniform decisions, set them aside.

The questions presented by the appellant, in what it designates as "Part 1" of its brief, are practically the same as those decided in *Kreigh v. Westinghouse & Co.*, 214 U. S. 249. No reference is made to that decision, and yet we are urged to take an opposite view of almost every proposition therein contained. No motion was filed to set aside any of the special findings of the jury, but, on the other hand, judgment was requested in favor of the company thereon notwithstanding the general verdict.

There is no finding or evidence that Kreigh had investigated or given any attention whatever to the method of operating the derrick, or whether there was any provision, by guy ropes or otherwise, to stop it after the bucket had been given the return push. He was under no obligation or duty so to do. The same may be said with reference to signals. He testified that he had not heard of any signals being given and was not relying upon a signal. He had probably not even thought of a signal. He was in a place in which he had a right to be and to which his duties called him, and he was attending to the duties for which he was employed. It was his right and his duty to assume that the master would protect him therein and subject him to no unnecessary danger without warning. He was not a vice principal in the matter of equipping or regulating the operation of the derrick. The superintendent was the vice principal, and the concreting of the

Kreigh v. Westinghouse & Co.

roof was a department of the work entirely distinct from the brick work of which he was foreman. It is evident, from the instructions given and the general verdict, although there is no such special finding, that the jury found as alleged in the petition that the master was negligent in not equipping the derrick with another guy rope or other device to control its movement or in failing to provide signals when the derrick with the hanging bucket was to be started to move, or in both respects. In either case the master is responsible in the absence of any contributory negligence on the part of Kreigh.

The duty of the master to furnish his employee a safe place to work and to use reasonable care to safeguard him against injury while in the discharge of his duty is a continuing one and can not be so delegated as to relieve him of his responsibility. (*Crist v. Light Co.*, 72 Kan. 135, 83 Pac. 199; *Brick Co. v. Shanks*, 69 Kan. 306, 76 Pac. 856; *Kreigh v. Westinghouse & Co.*, 214 U. S. 249.)

It is contended that the court erred to the prejudice of the defendant in its remarks to the jury after they had retired to consider of their verdict and were recalled into court. The evidence of some of the jurors as to what occurred in the jury room, of which the court had been informed, well justified a reprimand. While some of the remarks might well have been postponed until the verdict had been received, no intimation as to what the verdict should be or for whom it should be was made. We can not see that the appellant was prejudiced thereby.

Again, it is contended that the amount of the verdict, $7500, is of itself evidence that the jury were influenced by passion and prejudice and for that reason a new trial should be granted. Kreigh was knocked off a wall 42 feet high and was seriously injured. The extent of his injuries, the time he lost from work, his former and subsequent earning capacity, the expenses

incurred, his pain and suffering, his impaired condition for life, were all shown to the jury. The damages allowed do not seem extraordinary. The wonder seems rather to be that he survived.

We have examined all of the very numerous assignments of error, also the appellant's well-prepared brief, and are unable to designate any error in the proceeding sufficiently material to justify a reversal.

The judgment is affirmed. ·