## IGNETTI v. JOSEPH INTALL & CO. et al.

(Circuit Court of Appeals, Second Circuit. April 2, 1923.)

·No. 232.

**Shipping ⬅86(2)—Injury to stevedore held not due to negligence of ship or master stevedore.**

Where a rope, furnished for use of stevedores in loading, was shown to be new and strong, the fact that it became kinked and, failing to pass through a block, parted under the strain, does not establish, nor raise a presumption of, negligence of either the ship, which furnished it, or the master stevedore, who used it, which renders them liable for injury to a stevedore caused thereby.

Appeal from the District Court of the United·States for the Eastern District of New York.

Suit in admiralty by Gabrielle Ignetti against Joseph Intall & Co. and the Caribbean Shipping Company, Limited, Inc. Decree for libelant, and respondents appeal. Reversed.

For opinion below, see 285 Fed. 638.

James A. Hatch, of New York City (Morton L. Fearey, of New York City, of counsel), for appellant Caribbean Shipping Co., Limited, Inc.

William Butler, of New York City (George F. Hickey, of New York City, of counsel), for appellant Joseph Intall & Co.

Thomas O'Rourke Gallagher, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On January 27, 1920, at 11:30 a. m., the appellee was a member of a gang of stevedores employed by the appellant Intall & Co., and was engaged in stowing cargo in the hold of the steamship Lake Markham. He was struck and injured by a draft of iron sewer pipe, which was being raised from a lighter alongside the steamship by means of a boom attached to a hoisting appliance for No. 4 hatch. This was operated by a steam hoist. The tackle from the boom of No. 3 hatch was then attached to this draft, and the draft was swung over to be lowered into No. 3 hold by means of an engine hoist of the No. 3 hatch. While this work was being done, one of the guy ropes from No. 4 boom became kinked and failed to run through the block. The pull of the winch caused undue strain upon the rope, and it parted, causing the draft to strike the appellee. The rope was furnished by the steamship company. It was a new Manila rope, and was rigged up at the beginning of the work three or four days prior to the occurrence. That morning the rope was in operation and used for lowering some automobiles into hatch No. 3 by the stevedore gang, which was working the hoist and made the connections between No. 3 and No. 4 booms, for the purpose of carrying the draft to hatch No. 3. This new arrangement of hoisting appliance had only been in use about five minutes when the accident occurred.

The appellee was standing in the hatchway upon the cargo, talking to a fellow workman. The cargo had reached a point where but one or two drafts could be stowed under the deck, so that the heads of the stevedores standing in the hatchway upon the cargo were up to the level of the deck. The steamship was operated by the Emergency Fleet Corporation as agent for the Caribbean Shipping Company, Limited, Inc., and the accident happened at the Empire Stores, Pier 2, Brooklyn. The lighter from which the sewer pipe was taken was slightly forward of hatch No. 4.

The immediate cause of the accident to the appellee was that there was a kink in the guy rope, and caused by the undue strain placed upon it. Was there a negligent cause, attributable to either of the appellants, which caused this kink in the rope? The ship had no part in loading the vessel, nor did any of the crew attempt in any way to supervise the stevedores. They were independent contractors. The finding below is that the rope was new and evidently in good condition. The only claim of fault on the trial was that the ship had furnished an improper rope. The shipowner cannot be held liable for injury caused to the appellee because of a kink forming in a new rope which was in good condition. The stevedores had a guy rope man whose duty it was to straighten out any kinks when formed. When the ship furnished a new rope in good condition, its obligation was fulfilled, and it is not responsible for injury to the appellee.

Nor do we think the stevedores are liable. Contrary to the claim of the libel, the proof establishes that the rope which broke was new, strong, and fit for the purposes intended, and for which it was used. It had no defect. It had been used but four days prior to the accident. It is a known fact that ropes—even a new one—will kink at times. No reason is given for the kinking on this occasion, but probably it was because there was a long lead. The use made of the boom at No. 3 and No. 4 hatches caused a greater stretch of the rope to be used, resulting in liability to kink. This, perhaps, was a practical way of carrying on the work. No claim of negligence is or could be predicated upon this manner of carrying on the work. The place furnished appellee to work in was reasonably safe. What made it unsafe was the breaking of the rope. This, as we have pointed out, was due to no fault of the appellee's master. No failure of inspection is pointed out, which would have avoided the kinking of the rope. If any fault there be, it was that of a fellow workman solely, who at the time was performing a detail of his work, and not the master's duty. If the master's negligence was established, and it contributed to the accident, the fellow servant's negligence, contributing to the injury, would not have relieved the master from liability. Chicago R. R. Co. v. King, 222 U. S. 222, 32 Sup. Ct. 79, 56 L. Ed. 173; Kreigh v. Westinghouse & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984. But this is not the case here, for the employer is not shown to be at fault. Nor does a presumption of negligence follow from the fact that it parted. Horsley v. Modzelewski, 220 Fed. 241, 136 C. C. A. 503. The court below erred in imposing liability upon the appellants.

The decree is reversed.