## Case No. 17,516.

WHIPPLE v. CUMBERLAND MANUF'G CO.

[2 Story, 661.] [1]

Circuit Court. D. Maine.    Oct. Term. 1843.

DAMAGES—FLOWAGE OF LANDS—EXCESSIVE VERDICT.

1. Where A. brought an action against B. for flowing back the water of the river Presumpscot. to the injury of his rights, as riparian proprietor. and to the obstruction of his mills; it was *held*, that if the plaintiff could prove, that the natural flow of the stream was changed by any person, not having a legal right to change it. he could recover nominal damages, although no actual injury had been thereby occasioned to him.

[Cited in Roundtree v. Brantley, 34 Ala. 544.]

[1] [Reported by William W. Story, Esq.]

2. Wherever a wrong is done to a right, the law imports damage; and if no substantial injury be proved to be thereby occasioned, nominal damages will be given in support of the right.

[Cited in Pfeiffer v. Grossman, 15 Ill. 54.]

3. In such cases, if the plaintiff establish his right of action, the jury may, if they choose, give him such damages as will fully indemnify him beyond what the taxed costs would reach, and may take into consideration counsel fees, and other necessary expenses, fairly incurred by him in the case.

[Cited in brief in Hastings v. Livermore, 15 Gray, 12. Cited in Cleveland, C. & C. R. Co. v. Bartram, 11 Ohio St. 466.]

4. A verdict will not be set aside, in a case of tort, for excessive damages, unless it clearly appear, that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated.

[Cited in Clarke v. American Dock & Imp. Co., 35 Fed. 479; Ross v. Texas & P. Ry. Co., 44 Fed. 48; Barry v. Edmunds, 116 U. S. 565, 6 Sup. Ct. 509.]

[Cited in Woodbury v. District, 5 Mackey, 129. Cited in brief in Shaw v. Boston & W. R. Corp., 8 Gray, 81. Cited in New Orleans, etc., R. Co. v. Hurst, 36 Miss. 660; Burdict v. Missouri Pac. Ry. Co. (Mo.) 27 S. W. 461, 464; Willard v. Holmes (Com. Pl.) 21 N. Y. Supp. 1004.]

Action on the case for flowing back the water of the river Presumpscot, in the town of Gorham, Maine, to the injury of the rights of the plaintiff [Oliver M. Whipple], as a riparian proprietor, and also to the injury and obstruction of the plaintiff's mills, situated at or near Gambo Falls, on the same river. The declaration contained various counts, alleging the gravamen in various ways, in some of which the injury was asserted to be by flowing back the water, so as to obstruct the plaintiff's mills in their due operation, and in others, an injury also to the lands of the plaintiff, as a riparian proprietor, on the same river. The cause was tried at the adjournment of the May term, 1842, upon the general issue; and a verdict was found for the plaintiff for $1,400. [Case unreported.] At the trial it was admitted, on the part of the defendants, that the plaintiff was the owner of the mills, and mill privilege, and lands on the river Presumpscot, described in his declaration, to which the injury was alleged to be done. It was also admitted, on the part of the plaintiff, that the defendants were the owners of the "Knight Dam," so called, and the mill privilege erected thereon, which was situate lower down on the same stream than the plaintiff's mills and lands; and that the defendants, as such owners, were entitled to flow back the water of the river as far and as high as it had been flowed back by the Knight dam, which had been erected about 1786 or 1787, they having succeeded to all the rights of the proprietors of the Knight dam, and the privileges thereof. The main controversy at the trial turned upon this, whether the water was flowed back further than it was by the old Knight dam, which was affirmed by the plaintiff, and denied by the defendants; and also whether it flowed back so as to obstruct the plaintiff's mills and mill privilege, which was affirmed by the plaintiff, and denied by the defendants. A great deal of evidence was introduced to these points on both sides, and was submitted to the jury.

STORY, Circuit Justice, in summing up to the jury, after stating the various facts offered in evidence by the parties, said: The real question between the parties is, whether the water is now flowed back by the defendants upon the plaintiff's lands and mills, or upon either of them, higher and further than the Knight dam had formerly flowed it back. One means of ascertaining this is to ascertain whether the new dam, now erected on the Knight dam, is higher than the old dam; for if it is, that will, of itself, afford a strong inference, that the water is flowed back higher and further; for water will obey the ordinary operations of the law of nature. Streams do not flow backwards in the ordinary course of things, unless there be some obstruction below to interfere with their usual passage. Another means doubtless is to ascertain, whether, in point of fact, the water does now ordinarily flow backwards higher and further than formerly. Thus, for example, if it now ordinarily does drown or cover lands, or rocks, or banks in the stream, which were not formerly so drowned or covered in the ordinary course of the river; or if the mills of the plaintiff are now subjected to stoppage and obstruction from back water in the ordinary state of the river, which did not formerly take place, that also would furnish grounds, from which the jury might infer, that the present dam was higher than the old Knight dam. But flowage back, occasioned by extraordinary freshets, or by other distinct causes, in no wise connected with any supposed increased height of the Knight dam, ought not to be allowed to have any influence upon the minds of the jury against the defendants in the present cause.

In respect to the right of the plaintiff to maintain the present suit, it is not indispensable for him to show, that the water is flowed back by the defendants, so as actually to obstruct and stop the operation of his mills. There is evidence for the jury to consider on this point; and if they are of opinion, that such a stoppage and obstruction did exist, by the act of the defendants, they ought to give damages therefor to the plaintiff. On the other hand, if the defendants flowed back the water by increasing the height of the Knight dam beyond that of the old Knight dam, so as to drown or cover a portion of the plaintiff's land, that also would be a ground for giving him damages therefor. Indeed, the principle of law goes much further; for every riparian proprietor is entitled to have the stream flow in its natural channel, as it has been accustomed to flow, without any obstruction by any mill or riparian proprietor below

on the same stream, unless the latter has acquired such a right by long user, or by purchase, or in some other mode, which the law recognizes as conferring a title on him. See Tyler v. Wilkinson [Case No. 14,312]; Mason v. Hill, 5 Barn. & Adol. 1; Williams v. Morland, 2 Barn. & C. 910; Wright v. Howard, 1 Sim. & S. 190; Blanchard v. Baker, 8 Greenl. 253, 266; 3 Kent, Comm. lect. 52, p. 439. And if any mill or riparian proprietor below on the same stream does, without any such title, undertake to obstruct or change the natural stream, then, although the riparian proprietor above cannot establish in proof, that he has suffered any substantial damage thereby, still he is entitled to recover nominal damages, as it is an invasion of his rights, and would, if acquiesced in. make the tort thus done to him ripen by long user into a right against the party. In short, wherever a wrong is done to a right, the law imports, that there is some damage to the right, and, in the absence of any other proof of substantial damage, nominal damages will be given in support of the right. This is a well-known and well-settled doctrine in the law, and has been fully recognized in this court. Webb v. Portland Manuf'g Co. [Case No. 17,322]; Butman v. Hussey, 3 Fairf. [12 Me.] 407.

In respect to damages, in cases of this sort, where the plaintiff comes to vindicate his right against an injury by wrong-doers, if he establishes his right of action. the jury have a right, if they choose. to give him such damages as will fully indemnify him, beyond what the costs taxed in the cause will reach. In considering what is the proper amount or measure of damages, they are at liberty to take into consideration the necessary expenses of fees to counsel, and other necessary expenses, to which the plaintiff has been put in the progress of the cause, and by the nature of the defence, beyond what he will be indemnified for by the taxable costs. It might otherwise happen, that a plaintiff might be grievously injured, or suffer great pecuniary losses, by his endeavors to vindicate his right against mere wrong-doers. The jury are not, indeed, bound. under such circumstances, positively to include such necessary expenses in the damages. What the court mean to say is, that they are at liberty, if they choose, to include such reasonable compensation in the damages, for such necessary expenses, as they may think were properly and fairly incurred in the vindication of the right of the plaintiff. And with these remarks he left the case to the jury. who found a verdict for the plaintiff, as has been already stated, for $1400.

Rand & Preble, for defendants, afterwards filed a motion for a new trial. which was as follows: "And now. after verdict, and before judgment. the defendants move the court, that the verdict of the jury returned in this case, may be set aside, and a new trial granted; because the court instructed the jury. that the question to be considered and decided by them was, whether the dam, erected by the defendants and now standing upon their premises, is or is not higher than the Knight dam: whereas, the jury should have been instructed, that the question to be considered and decided by them was, whether the dam, erected by the defendants, and now standing upon their premises. does or does not cause the water to flow back upon the plaintiff's mills and mill-wheels. more than the Knight dam did. And also, because the court instructed the jury, that in estimating the damages to which the plaintiff would be entitled (if any), they should allow the plaintiff, in addition to the actual damages sustained by the flowage of his mill-wheels and mills, such further sum as would be sufficient to indemnify him for all expenses incurred by said plaintiff in the prosecution of this suit, including all counsel fees: whereas. the jury should have been instructed, that the plaintiff (if entitled to recover at all), could recover only the damages actually sustained by him in consequence of the flowage of water upon his mill-wheels. there being no evidence or pretence that such flowing was done vexatiously, or maliciously, but only under a belief that they were in the lawful exercise of their own right. And also. because the damages given by the verdict of the jury in this case, are unreasonable and excessive, no actual damage having been proved to have been sustained by the plaintiff. or any evidence introduced tending to prove any actual damage so sustained; and there being no evidence or pretence that such flowing was done vexatiously or maliciously, but only under a belief that they were in the lawful exercise of their own rights."

The motion coming on for argument at this term, Fessenden & Deblois, for plaintiff, resisted the motion. They insisted, that the charge of the court upon the first and second points was not correctly stated. As to the first point, they said: The court did not say the only question to be settled and decided by the jury was. "whether the dam erected by the defendants is or is not higher than the Knight dam." but it called the attention of the jury to the fact, that the defendants claimed to flow back the water of the river, as far as the Knight dam had formerly flowed it back; and that this fact had been admitted by the plaintiffs, and that, as one means of ascertaining, whether the defendants had flowed back further than they had a right, by virtue of the use of it for twenty years, that they would be called on to consider and decide. whether the dam erected by the defendants is or is not higher than the Knight dam.

There is a diminution.'if we may so style it, of the charge of the judge. He did charge the jury, that they must find that the defendants did cause the water to flow back upon the plaintiff's mills. and mill wheels, and land. more than they had any right to do. and more than the Knight dam did. One mode of ascertaining. whether the

property of the plaintiff had been trespassed upon by the defendants, was to find, whether the new dam was higher than the Knight dam, as, if it were so, the inference was almost a necessary one, that the new dam flowed back more water than the Knight dam. And to this point the defendants introduced much of their testimony, if not the most of it; and it was on this point, that both parties struggled to carry the jury. It was, therefore, not only proper, but absolutely necessary for the court to instruct the jury, that they must consider and decide, whether the dam was higher than the Knight dam. This it did do, but it did more, and instructed the jury in respect to the whole law of the case. He instructed them, that riparian proprietors had the rights to the flow of the stream passing by and over their lands, as it naturally flowed, and that any one, who obstructed such flow, in any manner, for any length of time, infringed upon the rights of such riparian proprietor, and subjected himself to the action of such proprietor. And, he further charged the jury, that the rights of the riparian proprietor could be taken away from him only by a user of the water, inconsistent with such rights, for a period of twenty years, in which case the acquiescence of such riparian proprietor in such infringement of his rights abridged them to the extent of such infringement of such rights, and no further. He also instructed the jury, that it was an infringement of such rights to flow back on the land of the riparian proprietor, even where the proprietor had not appropriated the water to the use of machinery, and that the flow of the stream was not, in any case, to be disturbed; and he gave to the jury the reason of the law, that twenty years' user of the water gave title to such use, and, therefore, the first infringement must be resisted, or the wrong might be suffered to ripen into a right. And this, he said, was the universal law of the stream, governing all the riparian proprietors on the stream. And it was only in connection with these doctrines, that he called the jury to consider, whether the Knight dam was as high as the new one, or rather, whether the new dam was any higher than the Knight dam. And the jury could not have mistaken this direction.

With these general directions, therefore, it was for the jury to decide, whether the new dam was higher than the Knight dam, and the direction was correct. He is sustained by the following authorities: 2 Chit. Pl. 600; Mason v. Hill, 5 Barn. & Adol. 1: Williams v. Morland. 2 Barn. & C. 910; Frankum v. Earl of Falmouth. 6 Car. & P. 529; Wright v. Howard, 1 Sim. & S. 190; Hazard v. Robinson [Case No. 6,281]; Tyler v. Wilkinson [Id. 14,312]; Webb v. Portland Manuf'g Co. [Id. 17,322]; Blanchard v. Baker, 8 Greenl. 253, 266; 3 Kent, Comm. (3d Ed.) lect. 52, p. 439.

This being the state of the law, we say, that the judge did right to charge the jury to examine, whether the new dam was higher than the Knight dam, as one of the modes of ascertaining, whether the defendants flowed back the river more, than by user for twenty years or grant, they had acquired a right to flow back on the land of the plaintiff, as far as they were proved to have flowed it.

As to the second point, they said: The judge did not charge the jury in the words, or to the import, conveyed in the second cause for a new trial. His charge was in substance and effect this: "That the jury had a right, in considering the damage the plaintiff had sustained, to allow such a sum as will remunerate the plaintiff for the expenses incurred by him in protecting and vindicating his rights, and in pursuing his remedy; that the plaintiff had a right to a perfect indemnity for the wrongs and injury he had sustained, and that the expenses, to which he had been put, were legitimate subjects for the consideration of a jury." But he did not charge the jury, that they might allow the fee of counsel, eo nomine. They added, that they were prepared to vindicate the doctrine stated in the second point, even if such had been the charge to the jury.

But THE COURT said, that the charge had been wholly misconceived, which had been given to the jury, upon the first and second points; and, therefore, upon these points, the case was not arguable. The charge was. in fact, that, which has been already stated.

Rand & Preble then said, that they should confine their argument to the third and last point, that the damages were excessive and unreasonable.

Fessenden & Deblois argued, that the damages allowed were but a reasonable indemnity for the plaintiff, considering the nature of the suit, the protracted character of the controversy, and the necessary expenses incurred to vindicate it. They cited and relied on Boston Manuf'g Co. v. Fisk [Case No. 1,681]; Bracegirdle v. Orford, 2 Maule & S. 77; Carter v. American Ins. Co., 8 Pet. [28 U. S.] 307; Conrad v. Nichols, 4 Pet. [29 U. S.] 309; Bell v. Cunningham, 3 Pet. [28 U. S.] 84; Thurston v. Martin [Case No. 14,018]; Coffin v. Coffin, 4 Mass. 41; Leeman v. Allen, 2 Wils. 160; Huckle v. Money, 2 Wils. 205; Sampson v. Smith, 15 Mass. 367; Boies v. McAllister, 3 Fairf. [12 Me.] 308.

STORY, Circuit Justice. We are of opinion, that the motion for the new trial ought to be overruled. The two first points have been already disposed of. The third point is, as to the damages being excessive. We take the general rule, now established, to be, that a verdict will not be set aside in a case of tort for excessive damages, unless

the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law, by which the damages are to be regulated. The authorities, cited at the bar, are entirely satisfactory and conclusive on this subject. Indeed, in no case will the court ask itself, whether, if it had been substituted in the stead of the jury, it would have given precisely the same damages; but the court will simply consider, whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all circumstances of the case; and it will be deemed so, unless the verdict is so excessive or outrageous, with reference to those circumstances, as to demonstrate, that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice, to mislead them. There is no pretence of any thing of this sort in the present case; and looking at the nature of the controversy, the number of years, which it has been pending, the unavoidable expenses attending the surveys and employment of agents, as well as the necessary expenses of the employment of counsel beyond what tho taxable costs can possibly remunerate, we cannot say, that there is any excess in the damages awarded. They may not be precisely, what we ourselves should have given, sitting on the jury; but we see no reason to say, that they can, in any sense, be treated as excessive, or unreasonable. See 2 Tidd, Prac. 909 (9th Ed.) 1828; Pleydell v. Earl of Dorchester, 7 Term R. 529; Gough v. Farr, 1 Younge & J. 477; Wood v. Hurd, 2 Bing. N. C. 166.

Motion overruled, and judgment according to verdict.

[For a hearing on certain questions which arose as to the taxation of costs on the part of the plaintiff, see Case No. 17,515.]