BARNETT FALTINALI *vs.* THE GREAT ATLANTIC & PACIFIC TEA COMPANY.

JANUARY 8, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This is an action on the case for negligence to recover damages for personal injuries. A jury in the superior court returned a verdict for the plaintiff in the sum of $5,000. The trial justice sustained the verdict. The defendant now presses its exceptions to the action of the court in denying its motions for the direction of a verdict in its favor and for a new trial.

The defendant operates a large warehouse in the city of Cranston in connection with a chain of retail stores. The building is modern and adequate in construction. The concrete floor is about two hundred feet long and some hundred and sixty feet wide. There are five large doors opening onto a loading platform which runs lengthwise with the building. Vegetables and fruit of various kinds, packed in barrels, crates, baskets and boxes, covered and uncovered, are received during the day at these doors and are so placed in sections on the floor of the warehouse as to leave five open spaces or alleys some twelve feet wide leading from the doors to the back of the building and one alley, about six feet wide, running parallel with the length of the building.

The filling of orders for the various stores is done by a night crew which starts to work around nine o'clock in the evening and is supposed to finish by six the next morning. The men work in pairs, a selector and a checker, both assisting in the moving of heavy articles when necessary. In the summertime, most of the vegetables come from local farms and are generally packed in open boxes. The various articles called for by the orders are selected and carried to the loading platform, preparatory to shipment the following morning, on low trucks without sides. From seventy-five to one hundred such trucks are usually employed each night to do this work.

The vegetables are wet and, in some cases, ice is used to keep them fresh. In moving them around on these trucks, greens in varying quantities keep dropping for one cause or another in the alley through which they are carried. As a result of the character and number of the conveyances, the

nature of the commodity handled, and the fact that water and ice is used to preserve the articles transported, the floor of the warehouse is more or less wet and continually subject to the presence of vegetable matter thereon accumulating as the work progresses.

The testimony shows that the persons in charge of the trucks were expected to pick up anything they might spill on the floor before proceeding with their work. If the article was wet, they had instructions to use sawdust and sweep the floor with a broom. Charles Hanscombe, a witness for the defendant and the person in charge of the night shift at the defendant's warehouse, testified as follows: Q. "In the course of handling those vegetables have you ever observed some portion of the vegetables falling to the floor of the warehouse?" A. "Oh, yes, sir. It is in the nature of the business. Any flat truck crossing the cement floor with vegetables with loose leaves would fall off, like celery or spinach, or anything of that sort." Q. "Is that material dirty in any way?" A. "No, it is just vegetable matter." Q. "Now, what was the practice there as to sweeping the floor of the warehouse?" A. "Well, during the course of the night business there are anywhere from seventy-five to a hundred of those flat trucks, four wheels, running around that floor and so much of the goods fall off that the great majority of the trucks have to be refilled. Otherwise the floor would be packed up with vegetables, fifty or seventy-five of those flat trucks on the floor during the course of the whole night's work, so naturally there could be no way of absolutely sweeping the entire floor until morning when all the flat trucks are taken to the large doors to be used in the daytime, and during that time the floor is swept clean and, if it needed it, it is washed." Referring more particularly to the alleys between the stacks of vegetables, this same witness testified that if he saw any vegetable matter in the doorways or alleys, while the men were working, he would notify the person in charge of the floor or a checker, who would clean it with a broom; that

this was done "Because, just as anybody would know, you are liable to slip on it at any time;" and that he knew that the presence of vegetable matter on those parts of the cement floor was dangerous.

The testimony further shows that after the floor was swept by the night crew in the morning, a day employee was charged with the duty to keep that entire floor, including the alleys or passageways, clean during the daytime. No person was employed by the defendant to do this particular work at night, even though the defendant knew that there was a greater probability of vegetable matter being on the floor of the alleys at that time and that the risk of slipping was therefore increased for its employees who had to use the alleys.

The declaration is in two counts. The first alleges that the defendant negligently permitted the floor of the warehouse to become unsafe and dangerous by allowing spinach that had been spilled to remain upon the floor; that at the time of the accident the plaintiff and a fellow workman named Papa were engaged in moving a barrel of potatoes; that the spinach on the floor near where they were working caused Papa to slip, and that as a result of his slipping, the barrel of potatoes struck and injured the plaintiff's foot. The second count alleges that a fellow servant of the plaintiff so carelessly handled a barrel of potatoes that it fell on the plaintiff's foot and caused the alleged injury.

It is admitted that the defendant employed more than five persons and had not elected to take advantage of the Workmen's Compensation Act. G. L. 1923, chap. 92, sec. 1. The defendant, therefore, was deprived of the defenses of assumption of risk, contributory negligence and the negligence of a fellow servant.

The plaintiff's testimony is to the effect that on the night of June 19, 1930, he saw a quantity of spinach fall from the truck of another employee, who picked up some of the spinach but allowed the rest to remain on the floor of the alley where the accident subsequently occurred; that about

two hours later he had occasion to go through that alley with a fellow workman, named Papa, to load a barrel of potatoes on their truck; that while he and Papa were lifting the barrel on the truck, Papa slipped on the spinach that the plaintiff had previously seen on the floor, and that, as a result of Papa's slipping, the barrel fell on the plaintiff's foot and injured him. Papa, who was still in the employ of the defendant when this case was tried in the superior court, corroborated the plaintiff's claim and was even more definite in stating that the spinach on the floor caused him to slip and release his hold on the barrel. The evidence for the plaintiff shows that the foreman, Hanscombe, had notice of the accident soon after it occurred, and that the defendant's superintendent was informed the following morning, from which time he took direct charge of the plaintiff's case.

The defendant's contention is that the plaintiff was injured while he and Papa were engaged in a bit of friendly wrestling. The foreman also testified that immediately after the accident the plaintiff told him that "he slipped on the edge of the flat (meaning truck) and hurt his ankle," while the superintendent in his testimony stated that neither the plaintiff nor Papa ever told him the cause or the details of the accident.

At the close of the evidence, the defendant moved for a direction of a verdict in its favor. This motion was denied by the trial justice. The defendant, thereupon, asked for a special finding, which was allowed by the court. The jury returned a general verdict for the plaintiff in the sum of $5,000. It also answered in the negative the following special question that was submitted at the request of the defendant: "At the time the plaintiff was injured was the floor of the warehouse where he was working in a reasonably safe condition under all the circumstances?" A motion for a new trial was made by the defendant and denied by the court.

The defendant's main contention before us is that there is no evidence of negligence on its part. This claim is based on the theory that, having furnished a floor of proper construction and safe when the plaintiff began to work, its subsequent condition was incidental to the plaintiff's employment and did not arise through any fault or omission on the part of the defendant. Counsel strongly urges that to hold the defendant liable under the circumstances in this case would charge it with the duty of an insurer. We do not agree with this contention. The cases cited are distinguishable from the instant case upon the facts. We recognize, particularly in construction cases, that the rule imposing upon the master a duty to furnish a servant with a reasonably safe place in which to work must be reasonably applied in view of the nature of the work, the constantly changing conditions as the work progresses, and the further fact that the place for carrying on the work is made by the servant himself as one of the incidents of his employment. In such cases, the master's liability under the so-called "safe place" rule, is not to be extended unreasonably to that of an insurer. But the case is different where, as here, the nature of the work is a continuous enterprise, and among other things, the appliances furnished and the conditions of the floor remain reasonably within the control of the employer. See *Connor* v. *White*, 41 R. I. 219. Under such circumstances, the employer is not relieved of responsibility if he merely furnishes a place that is reasonably safe in structure; it is his duty to see that the place is reasonably safe for the purpose and use for which it is intended, and to protect his employees against such perils as are either known or which could be known and remedied in the exercise of reasonable care. This is clearly stated, at page 256, in *Kreigh* v. *Westinghouse & Co.*, 214 U. S. 249, as follows: "Where workmen are engaged in a business, more or less dangerous, it is the duty of the master to exercise reasonable care for the safety of all his employes, and not to expose them to the danger of being hurt or injured by the use of a

dangerous appliance or unsafe place to work, where it is only a matter of using due skill and care to make the place and appliances safe. There is no reason why an employe should be exposed to dangers unnecessary to the proper operation of the business of his employer."

The duty of an employer to provide a reasonably safe place for his employees to work in is a continuing one and must be exercised whenever the circumstances require and demand it. *Santa Fe Pacific R. R. Co.* v. *Holmes*, 202 U. S. 438; *Kreigh* v. *Westinghouse & Co.*, *supra*. In the case of *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, where an employee was allowed to recover for injuries caused by slipping on an accumulation of grease on the running board of a paper-making machine that he was attending, the court, citing the above authorities and others, at page 499, says: "yet the duty of the master to provide a reasonably safe working place is a continuing one, and notwithstanding the place furnished was in the first instance a proper perform-ance of this duty, if it afterwards became temporarily unsafe and the master knew, or in the exercise of due care ought to have known, of such unsafe condition, the obliga-tion of the master required him to remedy it; and the fact that the unsafe condition was caused by the negligence of a fellow servant does not exempt the master from this duty."

This same principle is given express recognition by this court in *Venbuvr* v. *Lafayette Worsted Mills*, 27 R. I. 89, where a boy twelve years of age was injured by having his hand caught in a mechanical blower. The negligence alleged was that the employer permitted the blower to remain uncovered and permitted the floor in the vicinity of the blower to become slippery. It was further alleged that because of this condition the plaintiff slipped, that his hand was caught in the blower, and that he was seriously injured. The court held that the facts presented a question for the jury, and in commenting on the weight of the evidence says: "The testimony of the plaintiff relative to the slippery condition of the floor and its cause, viz., the

spilling of oil thereon by employees of the defendant, was contradicted; but his statement that he had slipped twice before upon the floor in that vicinity stands without denial. The spilling of oil upon the floor by employees of the defendant, if negligent, was the negligence of a fellow-servant for which the master would not be liable without notice, unless it was proved to be a practice of such duration or magnitude that notice thereof might be implied therefrom." This statement of the court applies with greater force in a case where the employer, at his own election, is deprived of the defense of the negligence of a fellow servant by statutory enactment.

The defendant relies strongly upon the case of *Charpentier* v. *Great Atlantic & Pacific Tea Co.*, 130 Me. 423, 157 A. 237, as a decision squarely in point in support of its position in the instant case. In examining that case we find that, although there are certain similarities there are vital differences in the facts, and also that the court uses carefully guarded language in reaching its conclusion. In the Maine case suit was brought against the defendant for injury alleged to have been received as the result of a fall caused by slipping on some vegetable matter on the floor where the plaintiff was employed. So far the two cases are similar. The opinion in the Maine case, however, contains the following language, which must not be disregarded in considering the scope of that decision: "The record discloses no statement by plaintiff to Mr. Desjardins that he slipped on a leaf or any refuse in the passageway, or that the alleged slipping was in any way due to conditions there. . . . There was no evidence that at any time before leaving, or afterwards, up to the time suit was brought, he made any talk or claim about his fall being caused by the presence of any leaf, or by any other condition of. the floor in the passageway.

"There was no evidence as to the length of time the leaf or substance on which he claimed to have slipped was on the floor, whether all day or only a few moments, or how

long it was there. There is nothing to show any knowledge on the part of the defendant company, or any of its employees, as to any condition which might have required their attention as a part of due care. . . . The plaintiff has definitely said that his fall was occasioned by stepping on one of the leaves on the floor, and, in our opinion, he has failed to show negligence on the part of the defendant company in that respect, as well as to the general condition of the floor."

The Maine court further protects itself against misunderstandings when it says: "The presence of other facts and circumstances which might possibly have been brought out, but which were not disclosed by the evidence, might have led to a different conclusion from that expressed in this opinion, but we are bound by the record as it has come to us." Although we agree with that decision, we do not consider it as controlling in the instant case because of the different and additional testimony before us.

The defendant attempts to distinguish and minimize the force of the decision in *Reese* v. *Loose-Wiles Biscuit Co.*, 224 S. W. (Mo.) 63, the only other case that has been cited to us or that we have been able to find which is comparable to the case at bar. In that case an employee was injured by a fall alleged to have been caused by stepping on some broken crackers that had been permitted to accumulate in a passageway used by the employee and cleaned by the employer at certain stated times. Some three hours before the accident the broken crackers had been seen by another employee on the floor of the aisle in which the plaintiff was walking when she fell. At the close of the testimony the defendant asked for an instruction, similar to our motion to direct a verdict, that the jury return a verdict for the defendant. This request was denied by the trial justice and an exception to his ruling was thereupon noted by the defendant. The jury returned a verdict for the plaintiff in the sum of $5,000, which was later approved by the trial justice. In passing upon this exception, the Kansas City

Court of Appeals of Missouri, after minutely describing the premises and the other circumstances surrounding the occurrence, says: "Defendant asked for an instruction in the nature of a demurrer to the ·evidence, and now insists that the facts show that the defendant was guilty of no negligence, and that plaintiff's fall was a mere incident of her employment in the operation of defendant's business. We think that under the facts there is no question as to defendant's negligence." This case and the Maine case that we have discussed are fundamentally in agreement.

The defendant in the instant case, having elected not to accept the provisions of the Workmen's Compensation Act, is denied the defenses of the plaintiff's contributory negligence, of the assumption of risk and of the negligence of a fellow servant. An employer, who is within the terms of the Workmen's Compensation Act and who fails to bring himself under its provisions, is liable for an injury to an employee while in the performance of his duties if the employer's negligence is the proximate cause of the injury. *Lydman* v. *De Haas*, 185 Mich. 128, 139; *Walsh* v. *Turner Center Dairying Assoc.*, 223 Mass. 386; *Estep* v. *Price*, 93 W. Va. 81; *Frost* v. *Clement*, 225 Mich. 267.

The real question here is whether or not the defendant, having actual or constructive knowledge of all the conditions that prevailed at its warehouse, did in fact use reasonable care to maintain the place reasonably safe for an employee to carry on his work. We grant that an employer in a case of this kind is not an insurer against accidents to his employees, but we do say that it is his duty to use reasonable care to provide for them a safe place in which to work. Whether he has discharged this duty is a question of fact to be determined from all the circumstances in each individual case.

The transcript in the instant case presents testimony which, if believed, is sufficient to support the allegation that the defendant failed to exercise the care that ordinary prudence would require. The defendant knew from ex-

perience that damp or wet vegetable matter on the floor of the alleys tended to create a slippery and dangerous condition. It guarded against this very condition in the daytime by employing a servant whose duty it was to keep these passageways clean but it failed to do so at night, when there was an increased movement of fresh vegetables on the open carriers that it furnished for that work.

The defendant had direct knowledge of the general conditions in its vegetable room at the warehouse. Whether it had constructive notice of the particular dangerous condition that the plaintiff testified caused his injury is a question of fact under all the evidence in the case. In addition to testimony that at night no employee was charged with the specific duty to keep the alleys clean, there is testimony to the effect that the spinach, which had been spilled by another employee in the course of his work, was allowed to remain on the floor of the alley for over two hours before the plaintiff was injured.

Time is an important element to consider on the question of constructive notice. What may be a reasonable time within which a defendant should know and remove an existing dangerous condition will vary with the nature and size of the business, the character, location and origin of the substance complained of, the method used, if any, to guard against such danger, the frequency of travel over the place in question and other circumstances that may be present in the individual case. *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165. In the present case, all the facts were properly left to the jury for its judgment upon this point and it specially found that, at the time the plaintiff was injured, the floor of the warehouse where he was working was not in a reasonably safe condition under all the circumstances.

The defendant produced testimony, through some of its own employees, of the custom and usage followed by others in the same occupation. This evidence is competent on the question of due care, but it is not sufficient in itself to

avoid a charge of negligence if the testimony shows that, irrespective of any custom or usage, the person whose conduct is under investigation did not use the care that ordinary prudence required and that he at times himself exercised. The weight to be given to this kind of evidence depends upon the extent of the custom or usage as well as the location, structure, and size, of the establishments concerned. What may be usual and proper in a small business may be entirely inadequate for a place where operations are conducted on a large scale, especially if there is testimony showing a variation in the latter place from the custom or usage invoked.

A review of the evidence in this case shows that the facts in issue were reasonably open to different conclusions. Under such conditions it was the duty of the trial court to submit the case to the jury.

Whether or not the defendant is entitled to a new trial depends upon the credibility of the witnesses and the reasonable inferences that may be drawn from the evidence. On disputed facts the jury found for the plaintiff and the court has approved its verdict. Both had the opportunity of observing the witnesses while testifying. We are deprived of this material aid in testing the credibility of oral testimony. After considering the testimony we cannot properly say that the trial court was clearly wrong in sustaining the verdict in favor of the plaintiff on the question of liability.

The issue of damages in this case presents a rather unusual situation. The plaintiff, a man about thirty years of age, stated that soon after the accident, the defendant through its superintendent promised to furnish him medical care and to pay him his full wages of $25 a week until he was cured of the injury to his foot. The testimony shows that five days after he was injured the plaintiff returned to the lighter but more responsible work of a checker at a slight increase in salary, and that he continued in this capacity until the following September, when, in the superintendent's absence and for some indefinite reason, he was laid off for about eleven working days.

Dr. Simon G. Lenzner testified that he was authorized by the superintendent to treat the plaintiff and that he began to do so on February 7, 1931; that he found a flattening of the scapoid bone and a tearing of the ligament underneath that bone, and that in his opinion the plaintiff was suffering from traumatic foot strain with involvement of the mid-tarsal joint, an injury at the vital point in the arch of the foot. He also described the treatment he gave the plaintiff from the time he sent him to the Miriam Hospital in February, 1931, up to the time of trial. His conclusion was that the plaintiff's injury was, in a sense, permanent; that by conservative treatment and without recourse to the chance of an open operation, which he did not advise, the plaintiff had progressed as far as he could; and that whether the plaintiff would require further medical attention depended upon what work he did and how he used his foot in the future, as there was the ever present danger of the arch breaking down under constant use, or from excessive pressure due to heavy work.

Following a disagreement between the plaintiff and the superintendent in March, 1931, Dr. Lenzner was notified to discontinue his services to the plaintiff at the defendant's expense. The doctor complied with this request, but continued to treat the plaintiff from then on as his private patient. His bill for these services was $465.

Dr. Lenzner's testimony stands alone and uncontradicted. No one of the other physicians, who had examined or treated the plaintiff and who were known to and had been paid by the defendant, was called to give any opinion as to the character, extent or permanency of the plaintiff's injury. The testimony, furthermore, was indefinite as to the length of time he was wholly or partially incapacitated for work and what loss in earning capacity he suffered. The only testimony on this point is to the effect that the plaintiff was not able to do any work before September, 1932, at which time he took a position as a salesman. With this incomplete record before us and with no assistance

from the trial justice as to his appraisement of the testimony on the question of damages other than that in his opinion "substantial justice" had been done, we are placed in an unfavorable position to determine with any degree of reasonable certainty whether the damages awarded by the jury are excessive.

The assessment of proper damages is a very important element in this case. On a motion for a new trial on the ground of excessive damages, the trial justice is required to pass his independent judgment upon the evidence and if he finds that the verdict is based on a finding as to the extent of the injury which is unsupported by the evidence, or that the amount is grossly excessive upon any possible finding regarding the extent of the injury, it is his duty to grant a new trial unless a remittitur to a proper sum is filed. *Di Vona* v. *Lee*, 42 R. I. 375. Where the testimony is conflicting, indefinite or vague so that its probative force is affected by its credibility as well as by its sufficiency, it is of material assistance to this court, in passing upon a question of damages raised in a bill of exceptions, to be informed by the trial justice of the bases or reasons for his conclusion. Under such circumstances the use of some general word or phrase alone is decidedly uninformative. However, even under these circumstances, we do not feel justified in arbitrarily setting a verdict aside or in ordering a remittitur on the ground of excessive damages unless the evidence clearly shows that the jury has acted upon a gross mistake of fact, or has disregarded the law, or that its decision is plainly affected by sympathy, passion,prejudice, or other improper influence. *Concannon* v. *Tyler*, 67 A. (R. I.) 430; *Whipple* v. *Cumberland Mfg. Co.*, 2 Story 661; *Thurston* v. *Martin*, 5 Mason 497; *Waters* v̇. *Bristol*, 26 Conn. 398; *Treanor* v. *Donahoe*, 9 Cush. 228. In the instant case although we may feel that the plaintiff was treated with liberality, yet there is no evidence in the record itself or any expression by the trial justice that warrants us in saying that the verdict of the jury was not the result of a fair and

dispassionate exercise of their judgment on the evidence before them.

The defendant's sixth exception rests upon a modification by the trial justice of the defendant's request to charge that: "In determining whether the floor was reasonably safe under all the circumstances you may consider the nature of the business, the *maturity and experience of the plaintiff*, and the customary practices of reputable operators of similar establishments." (italics ours) The court granted the request with the omission of the italicized words. In support of this exception the defendant states in his brief that "the duty of a master toward his servant is dependent in part upon the age and experience of the servant," and cites 18 R. C. L. 567 in support of this contention. The correctness of the defendant's contention depends upon what particular duty of the master is being considered. In the instant case the duty under consideration is the duty of the master to furnish the servant a reasonably safe place in which to work. The citation in Ruling Case Law to which our attention was directed relates to the duty of the master in certain instances to warn or instruct a youthful or inexperienced servant. In this case no claim is made of the breach of any such duty, nor is there any evidence that the servant was either youthful or inexperienced. The duty of the master to provide a reasonably safe place in which to work is owed alike to the young and to the old. Situations may arise where the master may have the additional duty of explaining to a youthful and inexperienced servant the hazards incident to his employment and of instructing him how to avoid them, but such is not the case before us. The request to charge as framed by the defendant was inapplicable to the facts in this case.

Defendant's exceptions 7, 8 and 9 are immaterial in view of the special finding by the jury and are, therefore, overruled. This disposes of all exceptions either briefed or argued, and all others are deemed to be waived.

All the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Edward F. McElroy, William I. Matzner,* for plaintiff.

*Marshall Swan, Frederick W. O'Connell, Swan, Keeney & Smith,* for defendant.